**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**

JOHN DOE AND JESSICA DOE
*AS NEXT FRIEND OF THEIR MINOR CHILD,*
JANE DOE

v.

Civil No. 1:24-cv-341-TSM
Opinion No. 2026 DNH 131

LAKE SUNAPEE YACHT CLUB, INC.
AND JUSTIN DAVIS

**ORDER ON PLAINTIFFS' MOTION TO EXTEND**
**EXPERT DEADLINE ON ONE LIMITED SUBJECT**

Plaintiffs John and Jessica Doe, as next friend of their minor child, Jane Doe, filed this employment discrimination action against Lake Sunapee Yacht Club, Inc. ("LSYC") and its former employee, Justin Davis ("Davis"), claiming that Davis sexually harassed Jane Doe while she was working as a line cook for LSYC during the summer of 2023. Doc. No. 1. The matter is before the court on Plaintiffs' motion to extend their expert disclosure deadline to enable them to disclose a digital forensics expert to render opinions regarding Davis's use of his personal iPhone and computer to access online pornographic and fetish-related content (Doc. No. 38). Defendants object to Plaintiffs' motion (Doc. Nos. 42 and 43).[1] This court concludes that Plaintiffs fail to meet their burden of establishing good cause for an extension. Therefore, and for all the reasons detailed below, their motion is denied.

[1] LSYC filed a "Joinder in Co-Defendant Justin Davis's Objection to Plaintiffs' Motion to Extend Expert Deadline" in which it joined in Davis's objection rather than presenting separate bases for opposing Plaintiffs' motion to extend their expert disclosure deadline. Doc. No. 43.

## BACKGROUND

Plaintiffs filed their Complaint in this case on October 21, 2024. Doc. No. 1. Therein, Plaintiffs asserted claims against LSYC for sex discrimination and harassment under Title VII and RSA 354-A (Count I), and for intentional infliction of emotional distress ("IIED") (Count III). Id. at ¶¶ 54-60, 65-69. They also asserted claims against Davis for aiding and abetting discrimination in violation of RSA 354-A (Count II), and for IIED (Count III). Id. at ¶¶ 61-69.

***Allegations Regarding Davis' Improper Conduct***

All of Plaintiffs' claims arise out of Davis's alleged conduct toward Jane Doe during the summer of 2023, when Davis was employed as the executive chef at LSYC and Jane Doe, who was fourteen years old, worked as a line cook in the kitchen of the facility. See id. at ¶¶ 16-27. Plaintiffs allege that almost immediately after she began working at LSYC, "Jane Doe suffered a barrage of unwelcome sexual conduct at the hand of her supervisor – the executive chef, Justin Davis[.]" Id. at 19. Specifically, but without limitation, Plaintiffs allege that Davis chased Jane Doe around the kitchen in an attempt to make unwanted physical contact with her, told Jane Doe about his sexual relationships with much younger women, encouraged Jane Doe to pursue opportunities to make pornography to earn extra income, and made crude sexual jokes in front of Jane Doe while she worked in the kitchen. See id. at ¶¶ 22-26. Davis denied these allegations in his Answer to the complaint. See Doc. No. 21 at ¶¶ 22-26.

Plaintiffs claim that during one of his discussions with Jane Doe, Davis informed Plaintiff that "one of his good friends ran an 'OnlyFans' page that focused on foot-fetish pornography, and that this would be an appropriate and lucrative way for his fourteen-year-old subordinate to earn substantial other income." Doc. No. 1 at ¶ 24. They further allege that on a separate occasion, Davis spoke in graphic terms about the process of "fluffing," a technique used in the pornography

film business to prepare a male actor for a performance. Id. at ¶ 25. According to Plaintiffs, Jane Doe was extremely uncomfortable during these and other interactions with Davis but was afraid to report Davis's conduct to management due to the control Davis had over her employment. Id. at ¶ 27. In his Answer, Davis denied that he made the alleged statements. See Doc. No. 21 at ¶¶ 24-25.

The record reveals that a number of LSYC employees submitted Incident Reports about Davis's inappropriate conduct during the summer of 2023. See Doc. No. 39 at pgs. 1-9.[2] Those Reports described sexually explicit comments that Davis allegedly made to young females who were working in the kitchen, as well as instances in which Davis allegedly engaged in the unwanted touching of female subordinates or coworkers. See id. At least one of the Reports, which was submitted by a minor female employee of LSYC, concerned Davis's inappropriate treatment of Jane Doe. Doc. No. 1 at ¶ 46. Consequently, LSYC was aware of Davis's inappropriate behavior toward female staff members. See Doc. No. 39 at pgs. 1-9. Plaintiffs claim that LSYC also knew, or should have known, about Davis's ongoing sexual harassment of Jane Doe. See Doc. No. 1 at ¶ 46. Nevertheless, according to Plaintiffs, LSYC's general manager falsely denied knowledge of Davis's behavior, and failed to terminate Davis's employment there, until Jane Doe's parents learned about the conduct and Jessica and Jane Doe met with LSYC's general manager to discuss Davis's behavior. See id. at ¶¶ 42-46, 51, 53.

***The Pretrial Scheduling Order***

On October 27, 2025, the parties filed a joint proposed Discovery Plan with the court. Doc. No. 22. Therein, the parties described their theories of liability and defense, addressed the scope

[2] Unless otherwise indicated, citations to page numbers correspond to the court's CM/ECF numbering system at the top right of the documents.

of anticipated discovery, suggested a date for the jury trial of the action, and proposed deadlines for the completion of discovery and other pretrial activities. Id. Notably, in their description of the anticipated discovery, Plaintiffs reported that they would require information "about Mr. Davis's use of electronic devices to access and interact with the content that he is alleged to have solicited Ms. Doe to create during their workplace interactions." Id. at pg. 3. Thus, Plaintiffs planned to seek information about Davis's use of electronic devices to access pornographic and foot fetish content. See Doc. No. 1 at ¶ 24 (alleging that Davis urged Jane Doe to seek opportunities to make pornography and encouraged her to consider foot fetish pornography). Davis, for his part, denied Plaintiffs' allegations against him. Doc. No. 22 at pg. 1. He further stated, with respect to his theory of his defense, that "[a]ll his actions were appropriate and within the scope of his employment[.]" Id.

On October 28, 2025, the court approved and adopted the Discovery Plan as a pretrial scheduling order with a few minor modifications. End. Order dated 10/28/2025. Significantly, the pretrial scheduling order required Plaintiffs to disclose any expert witnesses and produce any expert witness reports by June 15, 2026. See Doc. No. 22 at pg. 3; End. Order dated 10/28/2025. It also required Defendants to disclose any expert witnesses and produce any expert witness reports by August 15, 2026. See id. Furthermore, the pretrial scheduling order directed the parties to supplement their expert witness reports by September 15, 2026, complete all discovery by October 9, 2026, file any challenges to expert testimony by October 9, 2026, and submit any motions for summary judgment by November 13, 2026. See id. The jury trial of this case is currently scheduled to take place during the two-week trial period beginning on April 6, 2027. End. Order dated 10/28/2025.

***Davis's Responses to Written Discovery Requests***

Discovery proceeded in the ordinary course. See Doc. No. 32. On January 30, 2026, Plaintiffs served initial sets of Interrogatories and Requests to Produce Documents upon Davis, and Davis served his objections and responses to those Interrogatories and Requests upon Plaintiffs on March 16, 2026. Doc. No. 32 at ¶ 4. In Interrogatory No. 5 of their First Set of Interrogatories, Plaintiffs asked Davis to provide detailed information relating to his use, since January 1, 2021, of any "username, password, or credentials of any kind for any website, forum, platform, or any other program of any kind, that involves or involved the viewing, creation, distribution or consumption of pornography, including but not limited to fetish content, of any sort[.]" Doc. No. 42-1 at Interrogatory No. 5. In Request No. 1 of their First Set of Requests to Produce Documents, Plaintiffs asked Davis to produce certain materials relating "to any website, forum, platform, or program identified in response to Interrogatory 5 of Plaintiff's First Set of Interrogatories[.]" Doc. No. 42-2 at Request No. 1. After objecting to these discovery requests on several different grounds, Davis replied "none" in response to Interrogatory No. 5 and "not applicable" to Request No. 1. Doc. No. 42-1 at Interrogatory No. 5; Doc. No. 42-2 at Request No. 1. Thus, Davis denied Plaintiffs' implication that he accessed online pornography or foot fettish content at any time relevant to Plaintiffs' claims in this case.

Plaintiffs served a Second Set of Interrogatories upon Davis on March 2, 2026, and Davis served responses to those Interrogatories on March 16, 2026. Doc. No. 32 at ¶ 5. In their Interrogatories, Plaintiffs asked Davis to "identify by make, model, serial number, and storage capacity all Electronic Storage Devices you used to access the internet from January 1, 2023 to December 31, 2023." See Doc. No. 42-3 at Interrogatory No. 1. Davis, through his counsel, objected to that Interrogatory in relevant part as follows:

> OBJECTION: Objection by counsel as this Interrogatory was propounded prior to the exchange of any discovery in this matter for the purpose of providing information for Plaintiff to conduct a forensic examination of Defendant's Electronic Storage Devices. The information requested in this Interrogatory is not otherwise relevant to any claim or defense in this matter and exceeds the bounds of permissible discovery. "Although forensic examination is a potential remedy, the ability to inspect an opposing party's computers or other electronic devices is by no means a matter of right," and Plaintiff has not established any basis beyond mere speculation. *PlayUp, Inc. v. Mintas*, 350 F.R.D. 47, 52 (D. Nev. 2025); *see also* Fed. R. Civ. P. 34(a), Advisory Comm. Notes (2006) (noting that the rule does not "create a routine right of direct access to a party's electronic information system"). "Speculation, hunches, and skepticism about the completeness of discovery will not justify a forensic examination." *PlayUp, Inc*, 350 F.R.D. at 53. Plaintiff's counsel separately asserted that a forensic examination is necessary to "locate admissible information about [Defendant's] access and display of pornographic material in the workplace," however the Complaint contains no such allegation. Plaintiff bears the burden of showing that forensic examination is warranted based on the circumstances of a particular case which Plaintiff has not done. *See id.* at 52.

Id. (alteration in original). Davis provided no substantive information in response to Plaintiffs' request to identify his electronic storage devices. Id.

In a letter to Davis's counsel dated May 6, 2026, Plaintiffs' counsel addressed alleged deficiencies in some of Davis's answers to Plaintiffs' Interrogatories and Requests for Production of Documents, and requested that Davis serve supplemental answers to the discovery requests described in the letter "by no later than May 15." Doc. No. 45-1 at pgs. 1-3. Notably, in paragraph 3 of her letter, Plaintiffs' counsel addressed alleged deficiencies in Davis's answers to discovery requests concerning "[p]ornography and fetish accounts[.]" Id. Specifically, Plaintiffs' counsel challenged Davis's responses to Interrogatory No. 5 of Plaintiffs' First Set of Interrogatories and Request No. 1 of their First Set of Requests for Production of Documents. Id. at pg. 2. Counsel also challenged Davis's refusal to identify any electronic storage devices that he used to access the internet during the relevant time period, as Plaintiffs requested in their Second Set of Interrogatories. Id. As Plaintiffs' counsel argued with respect to those responses:

> [s]everal witnesses in this case will testify to Mr. Davis's frequent, detailed references to pornography and fetish content and websites in the workplace, including some very specific sites and content that he encouraged his young kitchen staff to access. As you know, Plaintiffs allege that Mr. Davis attempted to recruit Jane Doe to participate in pornography; he encouraged her to generate content on a very specific website. Mr. Davis's interactions with these sites are relevant and discoverable to help establish the veracity of these witnesses' expected testimony and to gainsay Mr. Davis's denials. Furthermore, the information and documents we have requested are plainly discoverable as they will help us to demonstrate the intentional or reckless nature of Mr. Davis's conduct when he discussed the disgusting and upsetting topics at issue in the LSYC workplace.

Id. at pgs. 2-3. She further warned Davis to "expect a motion to compel promptly unless you agree to withdraw your objections and produce the information and materials requested." Id. at pg. 3.

On May 21, 2026, Davis's counsel replied to the May 6, 2026 letter. Doc. No. 45-2. With respect to the "[p]ornography and fetish accounts" addressed in paragraph 3 of the May 6 letter, Davis's counsel stated that "[t]here is no responsive information[.]" Id. at pg. 1. Accordingly, Davis provided no additional information in response to Plaintiffs' written discovery requests on those matters.

***Davis's Deposition Testimony***

Subsequently, on May 26, 2026, Plaintiffs completed a three-hour videotaped deposition of Davis. Doc. No. 38-1 at pgs. 1, 22. During the deposition, Davis denied making many of the comments alleged in the complaint and in employee Incident Reports regarding his inappropriate conduct. See Doc. No. 38-1 at pgs. 5, 14-22. Additionally, Davis confirmed his written response to Interrogatory No. 5 of Plaintiffs' First Set of Interrogatories. Id. at pg. 12. Thus, Davis denied having a username, password or other credentials for any website, forum, program or platform that involves "the viewing, creation, distribution, or consumption of pornography, including but not limited to fetish content, of any sort." Id.

Davis also responded to questions regarding a Twitter account that he set up in 2009, while in graduate school. See id. at pgs. 10-12. In his testimony, Davis confirmed that his username for the Twitter account was "jld370." See id. at pgs. 11-12. However, he denied using that username on any other social media platform. Id. at pg. 12. Furthermore, when Plaintiffs' counsel presented Davis with screenshots from a website known as "FeetFinder," Davis denied knowing about the website or maintaining an account on the site using the username "Jld3700" or "jldg." See id. at pgs. 13-14; Doc. No. 38-4 at pgs. 1-2. He further denied allegations that he encouraged several LSYC employees to use the FeetFinder platform. Doc. No. 38-1 at pg. 13.

At the deposition, Plaintiffs' counsel asked Davis some general questions about his ownership and use of electronic devices. Doc. No. 45-3 at pgs. 11-16. In response to those questions, Davis testified that he owned a cellular phone and laptop computer when he was working at LSYC, and that he continues to use the same devices that he used at that time. See id. at pgs. 12-15. He further identified the cell phone as an iPhone 12 and described the laptop as a gaming computer with a dragon symbol on it. Id.

Plaintiffs assert that Davis's denials about his conduct, including his denials about his alleged use of online pornography and foot fetish content, lack credibility. See Doc. No. 38 at pg. 2. Consequently, following the deposition, Plaintiffs "[r]etained a digital forensics expert to help them investigate Mr. Davis's online presence;" "[s]erved a Rule 34 Request to permit the copying and inspection of Mr. Davis's personal devices to identify whether and when he accessed pornographic content";[3] and "[p]repared subpoenas directed at FeetFinder and OnlyFans to attempt to locate account information associated with Mr. Davis's suspected usernames and email

[3] Rule 34 governs requests for the production of documents, electronically stored information, and tangible things. See Fed. R. Civ. P. 34(a)(1).

addresses[.]" Id. at pg. 5. On June 12, 2026, three days before the deadline for Plaintiffs to disclose expert witnesses and produce expert witness reports, Plaintiffs filed the instant motion to extend their expert disclosure deadline "to allow a late expert disclosure in order to rebut the factual testimony of Defendant Justin Davis at his deposition on May 26, 2026." Doc. No. 38 at pg. 1.

## LEGAL STANDARD

District courts have broad discretion to set and enforce reasonable deadlines pursuant to a pretrial scheduling order. See Pérez-Cordero v. Wal-Mart P.R., 440 F.3d 531, 533 (1st Cir. 2006) (describing district courts' "significant discretionary authority" to set deadlines in accordance with the Federal Rules of Civil Procedure). Under Rule 16(b) of the Federal Rules of Civil Procedure, "[a] schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). In evaluating whether a party has shown good cause to extend a deadline, courts consider both "the diligence of the party seeking the amendment" and any prejudice to the opposing party if the motion is allowed. O'Connell v. Hyatt Hotels of P.R., 357 F.3d 152, 155 (1st Cir. 2004). The "standard 'focuses on the diligence (or lack thereof) of the moving party more than it does on any prejudice to the party-opponent.'" Somascan, Inc. v. Philips Med. Sys. Nederland, B.V., 714 F.3d 62, 64 (1st Cir. 2013) (quoting Flores-Silva v. McClintock-Hernández, 710 F.3d 1, 3 (1st Cir. 2013)). "In addition, the court considers factors such as 'the history of the litigation, the proponent's need for the challenged evidence, the justification (if any) for the late disclosure, and the opponent's ability to overcome its adverse effects.'" Insight Tech., Inc. v. SureFire, LLC, No. 04-cv-74-JD, 2008 WL 4526185, at *1 (D.N.H. Oct. 2, 2008) (quoting Macaulay v. Anas, 321 F.3d 45, 51 (1st Cir. 2003)). This court finds that even assuming Plaintiffs acted diligently to retain a forensics expert and conduct the discovery necessary to obtain an expert opinion regarding Davis's alleged use of his personal iPhone and computer to access pornographic and fetish-related

platforms, consideration of other factors relevant to this case warrant the conclusion that Plaintiffs lack good cause for an extension.

**DISCUSSION**

Plaintiffs seek an order extending their expert disclosure deadline so they can disclose the opinions of a digital forensics expert, if appropriate, "concerning the ownership and use of the FeetFinder account and other pornographic sites and applications that Davis has denied using[.]" Doc. No. 38 at pg. 5. As indicated above, Plaintiffs maintain that the proposed expert testimony is aimed at undermining "the credibility of Mr. Davis's denials about the same subject matter." Id. at pgs. 5-6. They also contend that there is good cause to extend their expert disclosure deadline because they could not anticipate Davis's testimony prior to his deposition, they acted quickly to obtain the discovery needed to make the additional expert disclosure following the conclusion of Davis's deposition, and "no party will be unfairly prejudiced by this limited extension." Id. at pg. 6. Thus, Plaintiffs reason that even if it takes some time to obtain Davis's personal devices,

> permitting a late, limited expert disclosure on issues related to the parties' credibility, even after the close of discovery, will not delay the disposition of any substantive legal issue. The Court can permit the defendants to depose any expert that the plaintiff discloses, and to make a rebuttal disclosure, without risking the trial date, which is still ten months off.

Id.

Davis disputes Plaintiffs' assertion that there is good cause for an extension. Doc. No. 42 at ¶ 1. He argues that Plaintiffs failed to act diligently to obtain discovery regarding his use of electronic devices even though they knew or should have known from Davis's pleadings and discovery responses that Davis denied making any inappropriate statements to Doe, including statements about online pornography or foot fetish sites. See id. at ¶¶ 13-14, 18. He also argues that Defendants will be unfairly prejudiced by the delay that will result if the court grants Plaintiffs' motion because the late disclosure will interfere with his ability to conduct effective depositions

of fact witnesses, including Jane Doe. Id. at ¶¶ 15-18. Additionally, Davis asserts that even if Plaintiffs acted diligently, the proposed expert testimony is not relevant to the parties' claims and defenses, threatens to create "a trial within a trial, confuse the issues, and mislead the jury[,]" and will usurp the jury's role in determining his credibility. Id. at ¶¶ 19-21.

## I. Plaintiffs' Failure to Establish the Need for the Proposed Expert Testimony

This court finds that under the circumstances of this case, Plaintiffs fail to establish good cause for extending their expert disclosure. As an initial matter, the anticipated expert testimony has little if any relevance to the parties' claims and defenses. As described above, Plaintiffs' claims arise out of Davis's conduct toward Jane Doe in the workplace, including comments he allegedly made to her regarding online pornography and foot fetish content. See Doc. No. 1 at ¶¶ 19-26. Plaintiffs do not allege that Davis viewed any such content while working at LSYC or attempted to show any such content to Jane Doe. See id. at ¶¶ 13-53. Whether Davis accessed online pornographic content on his personal electronic devices will not establish whether he made inappropriate statements to Jane Doe or otherwise harassed her in the workplace.[4] Consequently,

[4] Davis argues that under Rule 403 of the Federal Rules of Evidence, any relevance of the proposed expert testimony is outweighed by the likelihood that it will "result in a trial within a trial, confuse the issues, and mislead the jury." Doc. No. 42 at pg. 7. He also argues that the proposed expert testimony is improper because it will invade the province of the jury in assessing Davis's credibility. Id. at pg. 8. Both of these arguments concern the ultimate admissibility of expert testimony rather than the disclosure of that testimony, which is governed by Rule 26(a)(2) of the Federal Rules of Civil Procedure. See Fed. R. Civ. P. 26(a)(2)(A)-(B) (requiring parties to "disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705" and to accompany such disclosures with a written report containing, among other information, "a complete statement of all opinions the witness will express and the basis and reasons for them[.]"); Maquet Cardiovascular LLC v. Abiomed, Inc., No. 17-12311-FDS, 2026 WL 1303961, at *2 (D. Mass. May 12, 2026) ("Expert testimony that is admissible under Rule 702 [of the Federal Rules of Evidence] may still be excluded under Rule 403 'if its probative value is substantially outweighed by the danger of one or more of the following: unfair prejudice, confusion of the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.'" (quoting Fed. R. Evid. 403)). At this stage, where Plaintiffs have not disclosed a forensics expert or served an expert report

Plaintiffs fail to show that the opinion of a forensics expert is necessary to prove their claims or refute Davis's denials of the facts alleged in support their complaint. See Insight Tech., 2008 WL 4526185, at *1 (listing "proponent's need for the challenged evidence" as a factor courts consider in deciding whether there is good cause to extend a scheduling deadline (quoting Macaulay, 321 F.3d at 51)).

Plaintiffs nevertheless maintain that the potential disclosure of a digital forensics expert is relevant to Davis's credibility because the disclosure, "if it can responsibly be made following additional discovery," will rebut Davis's denials "concerning the ownership and use of the FeetFinder account and other pornographic sites and applications that Davis has denied using[.]" Doc. No. 38 at pg. 5. However, Plaintiffs fail to explain why the existing evidence is insufficient to undermine Davis's credibility. As Plaintiffs point out in their present motion, Davis's testimony is contradicted by Jane Doe's version of events, as well as by "numerous, written complaints that [LSYC] has produced in discovery." Id. at pg. 2. It is also contradicted by evidence that Plaintiffs recently submitted as a supplement to their present motion.[5] That evidence consists of excerpts from the deposition of August Zock, one of Jane Doe's coworkers during the summer of 2023.

regarding Davis's use of his electronic devices to access pornographic content, the question of admissibility is premature.

[5] On August 31, 2026, Plaintiffs filed an "Assented-To Motion to Supplement the Record on Their Motion to Extend Expert Deadlines (Doc. 38) and Motion to Compel (Doc. 52)." Doc. No. 56. Therein, Plaintiffs requested that the court consider excerpts from the deposition testimony of August Zock before ruling on the instant motion to extend their expert disclosure deadline and a separate motion to compel. Id. According to Plaintiffs, Mr. Zock was one of Jane Doe's coworkers during the summer of 2023, and his deposition testimony "directly contradicts Mr. Davis' sworn testimony." Id. at pgs. 1-2. They also contend that "Mr. Zock also provided new evidence that will inform the need to search Mr. Davis's devices, and specifically his cellular device[.]" Id. at pg. 2. This court granted the motion to supplement on September 1, 2026. End. Ord. dated 09/01/2026. Accordingly, this court considered Mr. Zock's testimony in connection with its ruling on the present motion.

See Doc. No. 58 at pg. 2. During his deposition, Mr. Zock described sexually explicit comments that Davis allegedly made while working in the kitchen at LSYC, including comments relating to pornography, OnlyFans, and FeetFinder. See id. at pgs. 2-3, 6-10. Mr. Zock also corroborated some of Plaintiffs' specific allegations, including their allegations that Davis encouraged Jane Doe to make pornography and spoke in graphic terms about "fluffing" in the pornography industry. See Doc. No. 1 at ¶¶ 24-25; Doc. No. 58 at pgs. 9, 13. Thus, Plaintiffs already possess significant evidence that undermines Davis's credibility and supports the specific facts alleged in their Complaint. Any need for a forensic examination of Davis's personal electronic devices is minimal at best.

Plaintiffs' need for an extension of their expert disclosure deadline is further called into question by the lack of specific evidence indicating that Davis used his personal electronic devices to access the pornographic and fetish-related content described in the Complaint.[6] As Plaintiffs' own motion makes clear, the proposed expert disclosure is dependent upon "the copying and inspection of Mr. Davis's personal devices to identify *whether* and when he accessed [such] pornographic content[.]" Id. at pg. 5 (emphasis added). In other words, Plaintiffs have not yet determined "if an expert will be able to testify that Mr. Davis has and uses profiles or accounts on the pornographic applications or sites that are at issue in this case." Id. For this reason as well, Plaintiffs fail to demonstrate that there is good cause for an extension.

[6] During his deposition, Mr. Zock testified that Davis used his cell phone to play sexually explicit music in the kitchen at LSYC. Doc. No. 58 at pgs. 3-4, 15-18. However, Plaintiffs do not allege, and Mr. Zock did not testify, that Jane Doe was present during those incidents. See Doc. No. 1 at ¶¶ 16-27; Doc. No. 58 at pgs. 3-4, 15-18.

## II. Nature of the Discovery Required to Complete the Expert Disclosure

A more significant issue concerns the nature of the discovery Plaintiffs seek as a prerequisite to the proposed expert disclosure – i.e., the copying and inspection of Davis's personal electronic devices. Davis opposes Plaintiffs' efforts to inspect his iPhone and laptop computer and argues that forensic imaging is neither necessary nor justified.[7] See Doc. Nos. 52 and 55. Because Plaintiffs fail to show, for purposes of the instant motion, that they are entitled to obtain the discovery necessary to complete their proposed expert disclosure, this court concludes that they cannot establish good cause for an extension under the circumstances of this case.

Ordinarily, "the party seeking discovery of electronic information on a device belonging to the other party is . . . not entitled to production of all of the electronic data on the device so that the party can rummage around looking for whatever the party might believe to be useful[.]" Peterson v. City of Minot, No. 1:16-cv-271, 2018 WL 5045194, at *5 (D.N.D. Oct. 17, 2018). Instead, the party seeking electronically stored information "must make specific requests for the [items] it wants to obtain that 'describe with reasonable particularity each items or category of items to be inspected' as required by Rule 34(b)(1)(A)." Id. (quoting Fed. R. Civ. P. 34(b)(1)(A)). "Then, the party to whom the requests are made has the obligation to search for and produce the [items] that are responsive and not subject to objection." Id. If that party fails to produce the requested discovery, the requesting party may seek court intervention by filing a motion to compel.

---

[7] On July 29, 2026, while the present motion was pending, Plaintiffs filed a motion to compel Davis to produce his personal cell phone and laptop computer for inspection and copying by Plaintiffs' forensics expert. Doc. No. 52. Davis filed an opposition to that motion on August 12, 2026. Doc. No. 55. Although the court will address that motion separately, it concludes that Plaintiffs' failure to justify a forensic examination of Davis's personal electronic devices in connection with the instant motion further warrants the denial of their request for an extension of their expert disclosure deadline.

See Maggi v. Grafton Cnty. Dep't of Corr., No. 18-cv-59-LM, 2021 WL 12147799, at *2 (D.N.H. Nov. 9, 2021).

"Not only is it clear from the text of Rule 34 that this is the normal course to be followed in the production of electronic information," but the Advisory Committee Notes to Rule 34 also advise caution with respect to requests for direct access to a party's electronic devices. See Peterson, 2018 WL 5045194, at *6. As the Advisory Committee Notes provide in relevant part:

> Inspection or testing of certain types of electronically stored information or of a responding party's electronic information system may raise issues of confidentiality or privacy. The addition of testing and sampling to Rule 34(a) with regard to documents and electronically stored information is not meant to create a routine right of direct access to a party's electronic information system, although such access might be justified in some circumstances. Courts should guard against undue intrusiveness resulting from inspecting or testing such systems.

Fed. R. Civ. P. 34, Advisory Comm. Notes to 2006 Amend. Accordingly, courts faced with a request for a forensic examination of another party's electronic devices "'must consider the significant interests implicated by forensic imaging before ordering such procedures,' including that they must 'account properly for the significant privacy and confidentiality concerns' of the parties." NOLA Spice Designs, LLC v. Haydel Enters., Inc., No. 12-2515, 2013 WL 3974535, at *3 (E.D. La. Aug. 2, 2013) (quoting John B. v. M.D. Goetz, Jr., 531 F.3d 448, 460 (6th Cir. 2008)).

"A forensic examination is an 'extraordinary remedy that requires substantial support.'" PlayUp, Inc. v. Mintas, 350 F.R.D. 47, 53 (D. Nev. 2025) (quoting Bass Underwriters, Inc. v. Kono, No. 2:22-cv-00138-RFB-EJY, 2025 WL 951889, at *4 (D. Nev. Mar. 30, 2025)). Consequently, cases involving discovery of electronically stored information

> make clear that a party who is dissatisfied with Rule 34 discovery responses and seeks a forensic examination of a particular electronic device must (1) offer something more than suspicion that the device contains material that is relevant, and (2) [show] that the forensic examination is proportional to the needs of the case

> in light of the factors set forth in Fed. R. Civ. P. 26(b)(1),[8] including the additional costs and burdens imposed by such an examination.

Peterson, 2018 WL 5045194, at *6 (footnote added). "[M]ere skepticism that an opposing party has not produced all relevant information is not sufficient to warrant drastic electronic discovery measures." NOLA Spice Designs, 2013 WL 3974535, at *2 (quoting John B., 531 F.3d at 460)); see also PlayUp, Inc., 350 F.R.D. at 53 ("The mere possibility that a party might not produce all relevant, unprotected documents, is not a sufficient basis for ordering such a party to disclose its entire computerized system of information management." (quotations and citation omitted)). Moreover, "courts have been cautious in requiring the mirror imaging of computers where the request is extremely broad in nature and the connection between the computers and the claims in the lawsuit are unduly vague or unsubstantiated in nature." NOLA Spice Designs, 2013 WL 3974535, at *2 (quotations and punctuation omitted) (quoting John B., 531 F.3d at 459-60)).

Here, Plaintiffs fail to establish a sufficient link between Davis's personal electronic devices and the claims asserted in the lawsuit to warrant a forensic examination. As discussed *supra*, evidence that Davis accessed pornographic content on his iPhone or laptop computer will do little if anything to show that he made inappropriate statements to Jane Doe or harassed her in the workplace. Moreover, Plaintiffs offer nothing more than suspicion to support their assertion that Davis's devices will yield the evidence necessary to complete the proposed expert disclosure. The record demonstrates that Davis repeatedly denied having any "username, password, or

[8] Rule 26(b)(1) of the Federal Rules of Civil Procedure provides: "Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable."

credentials of any kind for any website, forum, platform, or any other program of any kind, that involves or involved the viewing, creation, distribution or consumption of pornography, including but not limited to fetish content, of any sort" since January 1, 2021. Doc. No. 42-1 at Interrogatory No. 5; see also Doc. No. 38-1 at pgs. 101-03; Doc. No. 45-1 at pgs. 2-3; Doc. No. 45-2 at pg. 1. However, Plaintiffs provide no specific evidence, such as testimony from witnesses or documents from online pornographic or fetish-related entities, linking Davis's devices with the online platforms at issue in this case. See Peterson, 2018 WL 5045194, at *8 (to justify a forensic examination of the opposing party's electronic device, party seeking such discovery "must demonstrate there is a reasonable possibility amounting to more than surmise and conjecture that relevant and responsive information may still exist on the [device] . . . and that a forensic examination is proportional to the needs of the case."); NOLA Spice Designs, 2013 WL 3974535, at *3-4 (denying motion to compel forensic examination of plaintiff's computers where defendant failed to present sufficient evidence to refute plaintiff's assertions, including statements made under oath, that it produced all discoverable information in its possession, custody or control). "Courts have required that a movant make at least some effort, for example, by way of expert testimony or an affidavit, to show that this intrusive means of discovery is likely to yield the results sought." Hardy v. UPS Ground Freight, Inc., No. 3:17-cv-30162-MGM, 2019 WL 3290346, at *4 (D. Mass. July 22, 2019). Here, Plaintiffs provide no such evidence.

Plaintiffs also fail to address the inherent privacy concerns involved in a forensics examination of Davis's personal electronic devices. Such an examination "threatens to sweep in documents, and information that are not [remotely] relevant to the issues in the case, such as [Davis's] private text messages, e-mails, contact lists, and photographs." Id. at *3 (first alteration in original) (quoting Henson v. Turn, Inc., Case No. 15-cv-01497-JSW (LB), 2018 WL 5281629,

at *5 (N.D. Cal. Oct. 22, 2018)). Nevertheless, Plaintiffs make no effort to explain why their need for a forensic examination outweighs Davis's significant privacy interests in the contents of his iPhone and laptop computer. See Mathis v. Classica Cruise Operator Ltd. Inc., No. 23-cv-81479-Cannon/McCabe, 2025 WL 2144574, at *2 (S.D. Fla. May 5, 2025) (denying motion to compel forensic examinations of personal cell phones where defendant failed to show that its justifications for the examination outweighed "the cell phone owner[s'] compelling privacy interest[s] in the contents" of the phones). Accordingly, Plaintiffs fail to show that they are entitled to the production of the devices necessary for their forensics expert to render any opinions. Under these circumstances, there can be no good cause to extend their expert disclosure deadline.

**CONCLUSION**

For all the reasons detailed herein, the "Motion to Extend Plaintiff[s'] Expert Deadline on One Limited Subject" (Doc. No. 38) is denied.

SO ORDERED.

Talesha L. Saint-Marc
United States Magistrate Judge

September 15, 2026

cc: Counsel of record